On certified appeal from the Court of Appeals dated July 19, from judgment from the Marion County Circuit Court entered March 19,* on respondent's motion to dismiss as moot filed December 17, 2002, judgment of circuit court vacated and case remanded to circuit court with instructions to dismiss as moot September 5, reconsideration denied November 5, 2003

## STATE ex rel Don McINTIRE
## and Fred Hall,
*Appellants,*

*v.*

## Thomas A. BALMER,
*Respondent.*

## (CC 01C-17954; CA A117946; SC S49614)

75 P3d 894

Mary H. Williams, Solicitor General, Salem, filed the motion to dismiss as moot, reply to appellant's response, and response to court's questions for respondent. With her on the

---

* Paul J. Lipscomb, Judge.

motion, reply, and response was Hardy Myers, Attorney General.

Steven E. Benson, Portland, filed the response and memorandum for appellants.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, and De Muniz, Justices.**

GILLETTE, J.

** Balmer and Kistler, JJ., did not participate in the consideration or decision of this case.

## GILLETTE, J.

Don McIntire and Fred Hall (plaintiffs) brought this action in circuit court, labeled "Amended Complaint in Nature of Quo Warranto," against Thomas A. Balmer, challenging Governor Kitzhaber's appointment of Balmer to be an Associate Justice of this court.[1] Plaintiffs' theory was that Justice Balmer was not eligible to assume a position on the Supreme Court because the court, as presently constituted, is organized in violation of various requirements of the Oregon Constitution. Specifically, plaintiffs argued that the adoption by the people of Article VII (Amended) of the Oregon Constitution in 1910 occurred in violation of the "separate-vote" and "full-text" requirements of the Oregon Constitution, as well as in violation of the vote canvassing and election outcome proclamation requirements of the constitution. It follows, plaintiffs reasoned, that Article VII (Original) of the Oregon Constitution remains in effect. Under that provision, plaintiffs asserted, judges of the Supreme Court were elected from, and required to reside within, judicial districts. *See* Or Const, Art VII (Original), § 2.[2] Thus, plaintiffs concluded, because Justice Balmer was not appointed to represent a district, he cannot properly have been appointed to, elected to, or serve on the Supreme Court.

Governor Kitzhaber and Justice Balmer (hereinafter the State) answered and asserted various affirmative defenses, including a statute of limitations defense, a laches defense, an assertion that the "separate-vote" requirement interpretation found in *Armatta v. Kitzhaber*, 327 Or 250, 959 P2d 49 (1998) (and on which plaintiffs relied), was not

---

[1] The same two plaintiffs also brought a parallel action against Governor Kitzhaber. The two actions were consolidated in the trial court.

[2] Article VII (Original), section 2, of the Oregon Constitution provided:

"The Supreme Court shall consist of Four Justices to be chosen in districts by the electors thereof, who shall be citizens of the United States, and who shall have resided in the State at least three years next preceding their election, and after their election to reside in their respective districts:—The number of Justices, the Districts may be increased, but shall not exceed five until the white population of the State shall amount to One Hundred Thousand, and shall never exceed seven; and the boundaries of districts may be changed, but no Change of Districts, shall have the effect to remove a Judge from office, or requre (sic) him to change his residence without his consent."

retroactive, an assertion that plaintiffs lacked standing to bring the actions, an assertion that the courts do not have subject matter jurisdiction over the subject of plaintiffs' actions, and an assertion that it would violate the doctrine of separation of powers for a court to entertain actions of the kind that plaintiffs brought.

Both sides moved for summary judgment. On February 26, 2002, the trial court issued an opinion and order granting summary judgment for the state on the grounds that the ballot measure by which Article VII (Amended) was adopted was validly proclaimed and that plaintiffs claims were untimely under the ten-year statute of ultimate repose, ORS 12.140.[3] Sometime thereafter, the trial court entered judgment for the state.

Plaintiffs appealed the trial court's ruling in *State ex rel McIntire v. Balmer*, and then moved, pursuant to ORS 19.405, to have the appeal certified to this court. The Court of Appeals certified that matter, and this court accepted that certification.

Plaintiffs filed their opening brief in this court on October 1, 2002. The state then moved to dismiss the case as moot. The state's theory was that, because, in the interim, Justice Balmer had been elected to the position to which he originally had been appointed, the only appropriate form of challenge to his holding office had to be made pursuant to ORS 258.016(2). However, under that statute, any such challenge had to be brought within 40 days after the election. ORS 258.036(1). Therefore, the state asserted, the matter is moot and should be dismissed.

Plaintiffs responded that they had brought their actions under another statute, ORS 30.510, which authorizes actions of that kind "[w]hen any person usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military."[4] Plaintiffs asserts that that statute entitles them to

---

[3] ORS 12.140 provides as follows:

"An action for any cause not otherwise provided for shall be commenced within 10 years."

[4] ORS 30.510 provides, in part:

"An action at law may be maintained in the name of the state, upon the information of the district attorney, or upon the relation of a private party against the person offending, in the following cases:

challenge Justice Balmer's service on the bench at any time. The state responded that ORS 258.016(2), not ORS 30.510, is the later-enacted statute and controls in the present circumstances.[5]

■■ We move from the foregoing recitation of the procedural history of this matter to the point that we find to be dispositive. As previously explained, one of the state's theories for mootness in this case is the idea that, because Justice Balmer has been elected to a six-year term, any challenge to the appointment process by which he first came to this court now is moot. That point is correct, and plaintiffs appear to recognize as much, unless the election process itself is flawed in some way under the Oregon Constitution. Plaintiffs therefore also assert (as they must, if they are to have a claim) that the election process itself is constitutionally flawed because Justice Balmer was not required either to be appointed from or to run from a district but was, instead, allowed to run in, and was elected from, the state as a whole. We focus now on that issue.

Members of the Supreme Court are elected for a term of six years. *See* Or Const, Art VII (Original), § 3; Or Const, Art VII (Amended), § 1 (both so providing). Originally, Supreme Court justices also served individually as circuit court judges and were elected from those districts wherein they performed that circuit court function. As previously noted, Article VII (Original), section 2, of the Oregon Constitution provided:

---

"(1) When any person usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, * * * created or formed by or under the authority of this state[.]"

There is no question in this case that the office that Justice Balmer now holds is a "public office" under the statute.

[5] At that point, this court, on its own motion and after examining the statutes relating to proceedings in the nature of *quo warranto*, became concerned respecting the viability of any complaint that purported to be brought under ORS 30.510, but which neither was signed by nor alleged that it was being prosecuted by a district attorney. Based on those concerns and on other issues that had arisen since the state's motion to dismiss, this court addressed two questions to the parties.

The parties now have weighed in on the issues posed by the questions. The issue thus joined is an important one, and this court still is concerned about it. However, for the reasons that we now set out in the text, we conclude that the issue need not be resolved in this case.

"The Supreme Court shall consist of Four Justices to be chosen in districts by the electors thereof, who shall be citizens of the United States, and who shall have resided in the State at least three years next preceding their election, and after their election to reside in their respective districts:— The number of Justices, the Districts may be increased, but shall not exceed five until the white population of the State shall amount to One Hundred Thousand, and shall never exceed seven; and the boundaries of districts may be changed, but no Change of Districts, shall have the effect to remove a Judge from office, or requre (sic) him to change his residence without his consent."

However, the original judicial article of the Oregon Constitution contemplated that a different form of court organization might become more appropriate as the state grew. Thus, Article VII (Original), section 10, of the Oregon Constitution provided:

"When the white population of the State shall amount to Two Hundred Thousand the Legislative Assembly may provide for the election of Supreme, and Circuit Judges, in distinct classes, one of which classes shall consist of three Justices of the Supreme Court, who shall not perform Circuit duty, and the other class shall consist of the necessary number of Circuit Judges, who shall hold full terms without allotment, and who shall take the same oath as the Supreme Judges."

Acting under the authority granted it by the foregoing provision, the 1878 Legislative Assembly adopted a general law that completely reorganized the judicial branch along the lines anticipated in Article VII (Original), section 10: The Assembly created two "distinct classes" of courts, *viz.*, (1) a Supreme Court; and (2) a separate trial division of the judiciary consisting of "circuit judge[s]" to be elected from the then-existing judicial districts that theretofore had been used for election of members of the Supreme Court. *See* General Laws of 1878, p 31-32, §§ 2 and 6 (so providing). The circuit judges were required to be "residents of their respective districts at the time of their election or appointment." *Id.* at § 9. That general law placed no similar residential requirement on Supreme Court justices. By necessary implication, then, justices were to run for at-large seats from the state as a

whole. And so the procedure for the election of judges of this court has continued, uninterrupted, to this day.

Plaintiffs alluded to the foregoing history in a paragraph of their complaint in the parallel action against Governor Kitzhaber. In that paragraph, they state that

"[s]ince 1878, no governor, including defendant [Kitzhaber] has properly appointed a replacement Supreme Court Justice and plaintiffs believe that absent a declaratory judgment and injunction here, defendant [Kitzhaber's] appointment to replace Justice [as he then was] Kulongoski will violate the Oregon Constitution."

That statement is founded on plaintiffs' fundamental premise, which is that justices of this court must be appointed from and elected from judicial districts, and may not instead be appointed from, or be elected from, the state as a whole. As noted, plaintiffs must be correct in that regard, or their case is moot.

We find no support for plaintiffs' assertion. The authority conferred on the Legislative Assembly by Article VII (Original), section 10, of the Oregon Constitution could not have been more plain: It was left entirely to that body to determine when and whether to change the structure of the state judiciary by allocating the appellate part of the judicial work of the state to a full-time Supreme Court and the trial work of the state to a separate cadre of judges, to be called "circuit judges." In 1878, the legislature chose to do precisely that, and no more. It cannot be argued seriously that, in so doing, the legislature either misapprehended its authority or misapplied it. Therefore, from October 17, 1878 (the effective date of the statute), to the present day, judges of the Supreme Court of Oregon have been part of a "distinct class" that the legislature chose to have the people elect from the state as a whole. Thus, even if the 1910 constitutional amendment that created Article VII (Amended) of the Oregon Constitution somehow were invalid—an issue that we find unnecessary to address here—there is no question that Justice Balmer permissibly was elected from the state as a whole.

The foregoing analysis demonstrates that plaintiffs' complaint and request for relief always was, as the state now

asserts, moot. It follows that the trial court should have dismissed the case on mootness grounds.[6]

The judgment of the circuit court is vacated, and the case is remanded to the circuit court with instructions to dismiss as moot.

---

[6] In so stating, we note that the trial judge was not asked to consider the matter in light of the mootness issue that we now consider.